The Honorable Jim Stallcup Prosecuting Attorney Third Judicial Circuit P.O. Box 550 Cherokee Village, AR 72525
Dear Mr. Stallcup:
This is in response to Deputy Prosecuting Attorney Stewart K. Lambert's request for an opinion regarding Cherokee Village Suburban Improvement District. Mr. Lambert notes that Cherokee Village now operates as a Suburban Improvement District within Sharp County, and that there is some interest in incorporation. The Suburban Improvement District ("S.I.D.") is, however, responsible for the streets. His specific questions are as follows:
 1. Would Cherokee Village, as a city, be entitled to state turnback with the S.I.D. being responsible for the streets?
 2. Would or could Cherokee Village contract with the S.I.D.?
 3. Would the S.I.D. have to be dissolved to accomplish the City receiving the turnback funds?
I assume, with regard to your first question, that the reference to "state turnback" means revenues that are transferred to the Municipal Aid Fund for distribution to cities based on population, in accordance with the Arkansas Highway Revenue Distribution Law (A.C.A. §§ 27-70-201—209 (1987 and Cum. Supp. 1991) and the Revenue Stabilization Law (A.C.A. §§ 19-5-101 etseq. (1987 and Cum. Supp. 1991). Highway revenues that are transferred to the Municipal Aid Fund under the former body of law are paid over by the State Treasurer to the city treasurers of the first and second class and incorporated towns for credit to the street fund. A.C.A. § 27-70-207(b)(1) (Cum. Supp. 1991). The Revenue Stabilization Law established the Municipal Aid Fund, to consist of, inter alia, "[s]uch special revenues derived from highway user imposts, known as highway revenues, as may be made available to the fund for the benefit of municipalities by the Arkansas Highway Revenue Distribution Law, § 27-70-201 etseq. . . ." A.C.A. § 19-5-601(a)(2) (Cum. Supp. 1991). The Revenue Stabilization Law states that these special revenues ". . . shall be distributed within ten (10) days after the close of each calendar month to the respective cities of the first and second class and incorporated towns on the basis of population according to the most recent federal decennial census." Id. at subsection (b).
It thus appears that upon incorporation, the City of Cherokee Village will receive the above-referenced turnback funds. The Revenue Stabilization Law mandates the distribution of these special revenues to the cities on the basis of population. The fact that suburban improvement district streets exist within the city would not appear to affect this distribution.
While it is therefore my opinion that the answer to your first question is "yes," this is not to say that the use of the Municipal Aid Fund special revenues for maintenance, construction and reconstruction of suburban improvement district streets would constitute a lawful use of the funds. The hypothetical posed under your first question suggests that the S.I.D. streets have not been dedicated to the city. It should be noted in this regard that in accordance with the Revenue Stabilization Law, the special revenues derived from highway revenues ". . . shall be used as provided by the Arkansas Highway Revenue Distribution Law, § 27-7-201 et seq." A.C.A. § 19-5-601(b) (Cum. Supp. 1991). The Highway Revenue Distribution Law states, in turn, that the Municipal Aid Fund revenues are paid to the city treasurers ". . . for credit to the street fund, there to be used for the maintenance, construction, and reconstruction of streets which are not continuations of state highways. . . ." A.C.A. §27-70-207(b)(1) (Cum. Supp. 1991).
Although this latter provision does not contain an explicit reference to the "municipal street fund" or "municipal
streets," I believe such a reference can be fairly implied under the law. The city council has the ". . . care, supervision, and control of all the public highways, bridges, streets, alleys, public squares, and commons within the city;" and it shall "[c]ause those public highways, bridges, streets, alleys, public squares, and commons to be kept open and in repair, and free from nuisance." A.C.A. § 14-301-101(1) and (2) (1987).
Thus, while the city would, in my opinion, receive the state turnback notwithstanding the S.I.D.'s responsibility for its own streets, the use of those special revenues may pose a separate question. Any questions remaining in this regard should be referred to the district's counsel.
I am uncertain as to the particular contract or type of contract that is contemplated under your second question. As a general matter, the S.I.D. has authority to ". . . make contracts with the inhabitants of nearby municipalities. . . ." A.C.A. §14-92-220(b) (1987). A determination as to the legality of any proposed contract would require a review of the specific proposal.
The answer to your third question is, in my opinion, "no." The city's receipt of turnback funds is governed by the Code sections set out above in response to your first question. There is no indication in these provisions that the city's receipt of the turnback will be conditioned upon dissolution of the S.I.D.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elisabeth A. Walker.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh